Shane E. Olafson (Bar No. 024605)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
Phone: (602) 262-5311

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| The Friedkin Group, Inc., | No. CV-17-00949-PHX-BSB |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO REPORT AND RECOMMENDATION** |
| vs. | |
| danfriedkin.com, | |
| Defendant. | |

On August 15, 2017, this Court recommended "that [Plaintiff's] motion for default judgment (Doc. 13) be granted and that the Court enter an order directing the domain name registrar, GoDaddy, to transfer the domain name danfriedkin.com to Plaintiff." (Doc. 16, p. 18) Plaintiff appreciates the Court's thorough analysis and recommendation, but wishes to address an issue that recently came to Plaintiff's attention—namely, GoDaddy is no longer the registrar for *danfriedkin.com* (the "Domain Name"). As such, Plaintiff requests that the Court modify its recommendation and order the domain name registry Verisign, Inc. and registrar Bigrock Solutions Limited ("Bigrock") to effect the transfer.

**I.   Background**

Until recently, GoDaddy was the registrar for *danfriedkin.com*. That changed on or about August 7, 2017, when *danfriedkin.com* (the "Domain Name") was transferred to Bigrock Solutions Limited ("Bigrock") in Mumbai, India. *See* Declaration of Shane Olafson ("Olafson Decl.") at ¶ 2, attached as Exhibit A. Presumably, the infringing registrant, Rajesh Kumar, ordered this transfer in an attempt

102111840_1

to evade this Court's jurisdiction.  Plaintiff only learned of this transfer when undersigned counsel issued a request to GoDaddy to provide this Court with a Registrar's Certificate and to secure the Domain Name pending the Court's decision.  *Id.* at ¶ 2.  It appears from the WhoIs report that the Domain Name was transferred on August 7, 2017 – the same day Plaintiff contacted GoDaddy.  In response to that request, GoDaddy informed Plaintiff that GoDaddy no longer held the Domain Name.  *Id.*

Notably, the registrant, Mr. Kumar, has made cybersquatting into a business model of sorts.  As evidenced by the documents filed in this case, Mr. Kumar registered *danfriedkin.com* and then sought to extort Mr. Friedkin to purchase the Domain Name for $49,000.  Mr. Kumar has also registered numerous other domain names that incorporate the names of seemingly wealthy individuals and families, presumably so that he can attempt to extort them into purchasing the domain names.  For example, Mr. Kumar has also registered [www.hyukbinkwon.com](www.hyukbinkwon.com), [www.igorkesaev.com](www.igorkesaev.com), [www.isakandic.com](www.isakandic.com), [www.masahiromiki.com](www.masahiromiki.com), and [www.stevenfudvarhazy.com](www.stevenfudvarhazy.com), among others.  *Id.* at ¶ 4.  All of these domain names incorporate the names of individuals who are identified as having high net worth by Forbes magazine.  *Id.*  Mr. Kumar's pattern of illegal conduct must not be rewarded.

## II.     This Court Maintains In Rem Jurisdiction Over the Domain Name

Bigrock does not appear to have any presence in this District or elsewhere in the United States.  Nevertheless, this Court retains jurisdiction over the Domain Name, the *res*.  A similar situation was addressed by the Fourth Circuit in *Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248 (4th Cir. 2002).  In *Porsche*, the district court adopted *in rem* jurisdiction over several domain names under the ACPA.  Months later, the domain names notified the court that their registrant had decided to submit to personal jurisdiction in California, allegedly depriving the court of *in rem* jurisdiction.[1]

---

[1] To obtain in rem jurisdiction under the ACPA, a Plaintiff must show that it was unable to obtain personal jurisdiction over the domain name registrant, or that through due diligence it could not find the registrant.  15 U.S.C. § 1125(d)(2)(A)(ii).

1   *Id.* at 255.  The *Porsche* court rejected that argument, finding that as long as *in rem*
2   jurisdiction was proper *at the time the lawsuit was initiated*, courts maintain
3   jurisdiction over the *res* despite any subsequent change in circumstances that would
4   have otherwise deprived the court of *in rem* jurisdiction.

5         The court noted the similarities between *in rem* and *in personam* jurisdiction,
6   and reasoned that, like personal jurisdiction, "[b]ecause some objections to the
7   existence of *in rem* jurisdiction itself may be waived, plainly not all of the conditions
8   that create *in rem* jurisdiction must persist throughout the life of the case."  *Id.* at 256.
9   The court also looked at the language of the ACPA, which permits the owner of a
10  trademark to "file" an *in rem* action against a domain name given the proper
11  circumstances.  "[The ACPA] thus calls for a finding early in the case as to whether *in*
12  *rem* jurisdiction exists . . . ."  *Id.* at 257.  And "[b]ecause the ACPA refers specifically
13  to filing and a finding, it indicates . . . that once the action is filed and the finding is
14  made, *in rem* jurisdiction is ordinarily complete."  *Id.*  The Fourth Circuit went on to
15  note that the language of the ACPA does not require that "the conditions of filing must
16  persist" throughout the lawsuit.  *Id.*

17        The *Porsche* court also found that "the policy interests that lead courts to
18  continue to entertain cases even after the end of conditions that originally yielded
19  diversity jurisdiction apply with equal force to the jurisdiction created under the
20  anticybersquatting statute."  *Id.* at 258.  Ultimately, the Fourth Circuit "rejected the
21  argument that the ACPA's jurisdictional conditions must persist throughout the life of
22  an *in rem* case" to maintain jurisdiction over the *res*.  *Id.* at 258.  *See also Royal*
23  *Caribbean Cruises, Ltd. v. royalcaribean.com*, No. 3:15-CV-381-J-25MCR, 2016 WL
24  8943172, at *3 (M.D. Fla. Mar. 29, 2016) (finding that the court maintained *in rem*
25  jurisdiction over the domain name where, at the time Plaintiff filed the action, the
26  address listed for the registrant was in India, despite later learning that the registrant
27  was in the United States); *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 304 (2d Cir.
28  2002) ("Subsections (d)(2)(A) and (d)(2)(C) of the ACPA thus combine to reaffirm the

venerable principle that *in rem* jurisdiction depends upon a court's initially, but not necessarily continuously, having control of the physical *res*.").

The policies underlying the *in rem* provisions of the ACPA also support this conclusion. In passing the ACPA:

> Congress was disturbed by the increasing number of individuals who registered domain names in violation of trademark rights and then eluded trademark enforcement because either they could not be found or the trademark owner was unable to acquire *in personam* jurisdiction over them. Accordingly, in enacting the ACPA, Congress included an *in rem* provision to allow remedies for violations of the statute by anonymous or "absent cybersquatters."

*Standing Stone Media, Inc. v. Indiancountrytoday.com,* 193 F.Supp.2d 528, 531 n. 2 (N.D.N.Y. 2002). This case is exactly the sort of situation at which ACPA aims, and Mr. Kumar's transfer of the *res* despite having actual knowledge of this lawsuit is merely further evidence of his bad faith cybersquatting. If a cybersquatter could defeat a court's jurisdiction simply by transferring the *res* after a lawsuit was initiated, it would defeat the purpose of the ACPA. *Id.* ("[T]he ACPA was designed '[t]o remedy the perceived shortcomings of applying the [Lanham Act] in cybersquatting cases.'") (quoting *Sporty's Farm, L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 496 (2d Cir. 2000), *cert. denied*, 530 U.S. 1262, 120 S.Ct. 2719, 147 L.Ed.2d 984 (2000)).

Although not specific to domain names, other *in rem* cases are also instructive. In *Republic Nat'l Bank of Miami v. U.S.*, the Supreme Court was faced with the issue of *in rem* jurisdiction over property that had been forfeited under drug laws and then sold. 113 S. Ct. 554, 556 (1992). The Supreme Court rejected the argument that transfer of the *res* defeated the court's jurisdiction. *Id.* at 559. The Court noted that, while a district court needs jurisdiction over the *res* to <u>initiate</u> an *in rem* action, it does not need continuous control of the *res* to <u>maintain</u> jurisdiction. *Id.* The Supreme Court reasoned: "The fictions of *in rem* forfeiture were developed primarily to expand the reach of the courts and to furnish remedies for aggrieved parties, not to provide a

1  prevailing party with a means of defeating its adversary's claim for redress." *Id.*
2  (citations omitted).

3  The Ninth Circuit adopted that holding in *Stevedoring Services of Am. V.*
4  *Ancora Transport, N.V.*, 59 F.3d 879 (9th Cir. 1995). In *Stevedoring*, the plaintiff sued
5  for recovery of moneys due in the District of Oregon, asserting that the court had
6  jurisdiction over the *res* via funds deposited in a Portland bank. *Id.* at 881. The funds
7  were later released and the court's jurisdiction challenged. The Ninth Circuit rejected
8  any "continuous-control requirement" over the *res* to maintain jurisdiction. *Id.* at 883
9  ("[T]he district court's release of the garnished funds in SSA's action for *quasi in rem*
10 judgment did not divest the court of jurisdiction over the *res.*"). Otherwise, the
11 "prevailing party could frustrate the losing party's appeal by transferring the *res* out of
12 the district court's jurisdiction, a practice to which "[t]he Supreme Court objected in no
13 uncertain terms" in [*Republic National Bank*]." *Id.* at 882.

14 The Ninth Circuit reaffirmed this principle in *Ventura Packers, Inc. v. F/V*
15 *Jeanine Kathleen*, 424 F.3d 852 (9th Cir. 2005). In *Ventura Packers*, the *res* consisted
16 of three shipping vessels, which the court obtained *in rem* jurisdiction over when the
17 vessels were arrested pursuant to maritime process. *Id.* at 858. The owners of the
18 vessels then posted a bond and the vessels were released. *Id*. at 859. In disposing of
19 the jurisdictional challenge, the court succinctly noted that "*in rem* or *quasi in rem*
20 jurisdiction remains . . . as long as jurisdiction was properly obtained at the initiation of
21 the action." *Id.* at 860. Ultimately, the court held: "Because the release of the security
22 did not divest the district court of jurisdiction, we hold that the district court retained in
23 rem jurisdiction on remand." *Id.* at 861. *See also Royal Caribbean Cruises, Ltd. v.*
24 *royalcaribean.com*, No. 3:15-CV-381-J-25MCR, 2016 WL 8943172, at *7 (M.D. Fla.
25 Mar. 29, 2016) (slip copy) ("[T]he Court must assess *in rem* jurisdiction based on the
26 facts as they exist *at the time of filing*.") (emphasis added).

27 Applying the above analyses to the present situation, this Court properly
28 obtained *in rem* jurisdiction over the *res* at the time this lawsuit was initiated, and

maintains jurisdiction over the *res* today. Mr. Kumar cannot now defeat jurisdiction by transferring the *res* out of this District.

## II. The Court Should Order Verisign and Bigrock to Transfer the Domain Name

As discussed above, Bigrock does not appear to have any presence in the United States. Nevertheless, this Court retains jurisdiction over the Domain Name, the *res*, which Bigrock currently holds. Although a judicial order directing Bigrock to transfer the domain name may not be enforceable against Bigrock in India, Plaintiff believes that if the Court orders Bigrock to transfer the domain name, the International Corporation for Assigned Names and Numbers ("ICANN") may order Bigrock to comply. Bigrock, a registrar, "is one of several entities, for a given TLD, that is authorized by ICANN to grant registration of domain names to registrants." David Bender, *Computer Law* § 3D.03[3] at 3D–56 (updated to 2000). The most recent accreditation agreement requires a registrar (like Bigrock) to investigate, and take reasonable action, if a website is allegedly used for illegal purposes. If registrars fail to investigate and respond appropriately to the complaint, ICANN is supposed to do something about those noncompliant registrars. Put simply, ICANN is the entity that is charged with keeping domain name registrars honest, if necessary, by holding the registrar in breach or terminating the accreditation. Thus, an order directing Bigrock to transfer the domain may be enforceable, assuming ICANN is willing to enforce its registrar accreditation agreement with Bigrock.

Unfortunately, ICANN's willingness to step in and force Bigrock to transfer the Domain Name is hardly a guaranty. There is, however, another entity that can effect the transfer. Verisign, Inc. ("Verisign") is headquartered in the United States, in the Eastern District of Virginia. Verisign is the "registry" for all domain names that end in ".com." As such, Verisign can control those domain names, including transfer of any domain name that ends in ".com." Plaintiff has contacted Verisign and asked that it

issue a Registry Certificate and secure the Domain Name at issue. Olafson Decl. ¶ 6. To date, however, Verisign has not done so. *Id.*

A similar situation was addressed by the Eastern District of Virginia in *America Online, Inc. v. AOL.org*, 259 F.Supp.2d 449 (E.D. Va. 2003). In *AOL*, the trademark holder prevailed in an *in rem* cybersquatting action, and the court ordered the registrar, which was headquartered in China, to transfer the domain name. Despite receipt of that order, the registrar failed to comply. Instead, the registrar (presumably at the registrant's request) transferred to the domain name to another foreign registrar located in South Korea. *Id.* at 450. Therefore, the plaintiff asked the court to modify its order and to direct Verisign, which at the time was the domain name registry for all ".org" domains, as well as any other registrar that may become involved, to transfer the domain.

The district court noted:

> This case well illustrates the difficulties frequently encountered by trademark owners who prevail in *in rem* ACPA cases and then seek to enforce court domain name transfer orders against foreign registrars and registrants. Here, it appears the domain name at issue has been shuttled through . . . two foreign registrars in succession, rather like a children's game of "keep away. . . ." Indeed, it appears that this latest change of registrars may have been motivated by a desire on the part of the registrant, or those controlling a fictitious registrant, to place another obstacle in the path of enforcing the Judgment Order by ensuring that the domain name in issue is in the hands of a registrar with no contacts with this country.

*Id.* at 452–53. Viewed in that light, which is almost identical to the present situation, the court framed the issue before it as "whether federal courts in ACPA *in rem* cases may order a domain name registry to transfer an infringing domain name from the infringer to the trademark holder where, as here, the registrar has refused or failed to do so after notice of an appropriate order." *Id.* at 453. The *AOL* court answered in the affirmative and, after discussing the ACPA at length, held that "the statutory remedies granted under the ACPA for *in rem* actions are properly enforced by a court order directing the registry, if necessary, to transfer an infringing domain name to the

trademark owner." *Id.* at 454 (emphasis added). *See also Office Depot, Inc. v. Zuccarini*, 621 F. Supp. 2d 773, 778 (N.D. Cal. 2007), *aff'd*, 596 F.3d 696 (9th Cir. 2010) ("Despite the day to day control registrars exhibit over the ownership of domain names, however, the registry maintains the records that ultimately determine the existence and ownership of domain names.").

The *AOL* court went on to explain that "the registry's ability to delete or change the registration information stems from its physical control of the Registry Database which contains all the domain name registrations in the top-level domain for which the registry is responsible. 259 F.Supp.2d at 455. Here, the top level domain is ".com," and Verisign has the ability to effect the requested transfer.

Finally, the *AOL* court paid homage to the equities of the situation, noting that:

> Also baseless is any claim that such a transfer order is unfair to infringing foreign registrants. Significantly, the foreign registrants in this case, like all registrants, had a choice of top-level domains in which to register a domain name. By choosing to register a domain name in the popular ".org" top-level domain, these foreign registrants deliberately chose to use a top-level domain controlled by a United States registry. They chose, in effect, to play Internet ball in American cyberspace. Had they wished to avoid an American ACPA suit and transfer order and American jurisdiction altogether, they might have chosen to register the infringing domain name in top-level domains with solely foreign registries and registrars, such as ".kr".

*Id.* at 456-57.

Because Mr. Kumar chose to register a domain name using the ".com" top-level domain, he chose to "play Internet ball in American cyberspace," and ordering Verisign to transfer the infringing Domain Name to plaintiff is the equitable solution. *Id. See also Zuccarini*, 621 F. Supp. 2d at 778 ("faced with the somewhat metaphysical question of where the intangible property comprising a domain name exists, this Court will follow Congress' suggestion in ACPA that a domain name exists in the location of both the registrar and the registry. As such, this is the appropriate Court to oversee levy upon domain names listed on the Verisign registry.")

### III.  Conclusion

This Court has already recognized Mr. Kumar's bad faith registration of the Domain Name, and the appropriateness of ordering transfer of the Domain Name to plaintiff. Mr. Kumar should not be allowed to play "keep away" by transferring the Domain Name despite actual knowledge of this action. Plaintiff therefore respectfully requests the Court modify its Report and Recommendation to order Verisign and Bigrock to transfer the Domain Name to Plaintiff.

RESPECTFULLY SUBMITTED this 22nd day of August, 2017.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: *s/ Shane E. Olafson*
Shane E. Olafson
201 East Washington Street, Suite 1200
Phoenix, AZ  85004
*Attorneys for Plaintiff*