# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Friedkin Group Incorporated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>danfriedkin.com,<br><br>　　　　Defendant. | No. CV-17-00949-PHX-BSB<br><br>**AMENDED REPORT AND RECOMMENDATION** |

Plaintiff Friedkin Group Incorporated (Plaintiff or Friedkin) has filed a Response to the Court's August 14, 2017 Report and Recommendation (Doc. 16) and requests that the Court partially modify its recommendation pertaining to an order to transfer a domain name. (Doc. 17.) As set forth below, the Court grants Plaintiff's request and amends the Report and Recommendation.

**I.　Procedural Background**

On March 30, 2017, Plaintiff filed a complaint asserting *in rem* claims for cybersquatting under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d)(2), against the Defendant domain name, *danfriedkin.com*. (Doc. 1.) On June 6, 2017, Plaintiff filed a motion for default judgment, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Doc. 13.) On August 15, 2017, the assigned Magistrate Judge filed a Report and Recommendation concluding that this Court has subject matter and *in rem* jurisdiction, that Plaintiff properly completed service of process, and that Plaintiff sufficiently stated a claim for cybersquatting and established its

entitlement to relief. (Doc. 16.) In the Report and Recommendation, the Magistrate Judge also found that Plaintiff had satisfied the requirements for default judgment and recommended that the Court enter default judgment in Plaintiff's favor and enter an order directing GoDaddy, LLC (GoDaddy), the domain name registrar located in Arizona, to transfer the domain name *danfriedkin.com* to Plaintiff. (*Id*.) The parties have not filed objections to the Report and Recommendation and the time to do so has passed. (Doc. 16 at 19); *see* 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 6, 72.

However, on August 22, 2017, Plaintiff filed a Response to the Report and Recommendation to notify the Court that Rajesh Kumar (Kumar), the registrant of the Defendant domain name, transferred the domain name from GoDaddy to a foreign registrar, Bigrock Solutions Limited (Bigrock), located in Mumbai, India. (Doc. 17.) Plaintiff asserts that Kumar transferred the Defendant domain name on or about August 7, 2017 in an attempt to evade this Court's jurisdiction. (*Id*. at 1-2.) Therefore, Plaintiff requested that the Magistrate Judge modify the Report and Recommendation to recommend that the Court enter an order directing Bigrock to transfer the Defendant domain name *danfriedkin.com* to Plaintiff. (*Id*. at 6.) Recognizing that Bigrock, as a foreign registrar, may not respond to an order from a court in the United States, Plaintiff also requested that the Court enter an order directing the domain name registry, Verisign, Inc. (Verisign), headquartered in Virginia, to transfer the domain name to Plaintiff.[1] (*Id*. at 6, 9.) Defendant has not responded to Plaintiff's Response to the Report and Recommendation and the time to do so has passed.

---

[1] A registry and registrars have different responsibilities related to domain name registration. "The registrars handle the retail side of domain name registration, selling domain names to individual domain name registrants. The registry, in turn, performs a central but more limited function, namely maintaining and operating the unified Registry Database, which contains all domain names registered by all registrants and registrars in a given top level domain." *Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 619 (E.D. Va. 2003). VeriSign is the registry for all domain names ending in ".com." *Id*. at 618.

On August 23, 2017, Plaintiff filed a Supplement to its Response to the Report and Recommendation to notify the Court that Verisign had advised Plaintiff that it could not transfer the domain name registration, but that it could transfer the domain name by changing the registrar of record from Bigrock to GoDaddy. (Doc. 18.) Therefore, Plaintiff requested that the Court issue an order (1) directing Bigrock to transfer the domain name *danfriedkin.com* to Plaintiff, (2) directing Verisign to change the registrar of record from Bigrock to GoDaddy, and (3) directing GoDaddy to transfer the domain name registration to Plaintiff. (*Id.*) Plaintiff asserts that Kumar's transfer of the Defendant domain name to a foreign registrar does not affect this Court's jurisdiction over the Defendant domain name or its authority to order the transfer of the domain name. (Doc. 17 at 2-6.) As set forth below, the Court agrees and amends its Report and Recommendation to modify only its recommendation that the Court enter an order directing GoDaddy to transfer the Defendant domain name to further recommend that the Court also direct Bigrock transfer the domain name to Plaintiff and direct Verisign to change the registrar of record from Bigrock to GoDaddy.

**II.     Jurisdiction and Venue**

The ACPA provides that a trademark owner "may bring an in rem action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125(d)(2)(A). The statute further provides that "a domain name shall be deemed to have its situs in the judicial district in which – (i) the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125(d)(2)(C).

Plaintiff's Complaint alleged that Kumar registered the Defendant domain name with GoDaddy, a registrar located in Arizona, in October 2016. (Doc. 1 at ¶¶ 8, 13, 14.) On May 19, 2017, the Clerk of Court entered default against the Defendant domain name. (Doc. 12.) Plaintiff's response to the Report and Recommendation asserts that Kumar transferred the domain name registration in August 2017, several months after Plaintiff

filed its Complaint in March 2017 and after the entry of default in May 2017, but before the entry of default judgment. (Doc. 17 at 1-2.) Therefore, when Plaintiff filed the Complaint, this Court could properly assert *in rem* jurisdiction over the domain name and venue was proper in this judicial district.

To the extent Kumar's transfer of the Defendant domain name registration from GoDaddy to Bigrock would render venue in this district improper, such defect would be waived by the Defendant's failure to appear or file a responsive pleading. *See Williams v. Life Savings and Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) ("Defects in venue are also waived if they are untimely asserted. In addition, if a party is in default by failing to appear or to file a responsive pleading, defects in venue are waived, a default judgment may be validly entered and the judgment cannot be attacked collaterally for improper venue.") (citing Fed. R. Civ. P. 12(h)(1); *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).

Therefore, the issue now presented is whether the domain name registrant, Kumar, can defeat this Court's *in rem* jurisdiction over the Defendant domain name by transferring the domain name registration to a foreign registrar before the entry of default judgment. In other words, does this Court retain *in rem* jurisdiction over the Defendant domain name, *the res*, when it is removed from this judicial district.[2] Although Plaintiff has not cited a case directly on point, and the Court has not found case law that directly addresses this issue, the Court concludes that Kumar cannot evade this Court's jurisdiction by transferring the domain name registration to a foreign registrar.

---

[2] Transferring the Defendant domain name registration to a foreign registrar does not defeat the statutory requirements to assert *in rem* jurisdiction under the ACPA. *See* 15 U.S.C. § 1125(d)(2)(A)(ii)(a trademark owner may file an in rem civil action "if the court finds that the owner — (I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under [§ 1125(d)(1)]; or (II) through due diligence was not able to find a person who would have been a defendant in a civil action under [§ 1125(d)(1)]"). In this case, the Court found that *in rem* jurisdiction was proper because Plaintiff could not establish *in personam* jurisdiction over Kumar, a resident of India without sufficient contacts in Arizona. (Doc. 16 at 15-16.) By transferring the Defendant domain name, Kumar has not created additional contacts with Arizona or otherwise subjected himself to personal jurisdiction in this district. (*See id.* at 16 (citing *Enterprise Holdings, Inc. v. Enterprisecarrentals.com*, 2012 WL 527355, at *3 (E.D. Va. Jan. 30, 2012); *Con-Way Inc., v. Conwayracing.com*, 2009 WL 2252128, at *2 (N.D. Cal. July 29, 2009); *Globalsantafe Corp.*, 250 F. Supp. 2d at 615).)

In analogous circumstances, courts have retained *in rem* jurisdiction even if the *res* was removed from the jurisdiction or changed circumstances would establish personal jurisdiction. *See Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 93 (1992) (holding that at outset of civil forfeiture case the *res* must be located in the jurisdiction that asserts authority over it, but *in rem* jurisdiction survives even if the *res* is removed from the jurisdiction); *see also Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 258 (4th Cir. 2002) (holding that a registrant in an ACPA cybersquatting case could not defeat a district court's *in rem* jurisdiction over an infringing domain name by submitting to personal jurisdiction in another district because "not all of the conditions that create *in rem* jurisdiction must persist throughout the life of the case.").

In *Republic*, the Court rejected the government's attempt to defeat appellate jurisdiction in an *in rem* action by removing the *res* from the jurisdiction after receiving an order of forfeiture. *Id*. at 88-89. The Court stated that "the fictions of *in rem* forfeiture were developed primarily to expand the reach of the courts and to furnish remedies for aggrieved parties . . . ." *Id*. at 87 (citations omitted). The Court further explained a court's traditional "concerns of jurisdiction: enforceability of judgments and fairness of notice to the parties" do not depend "absolutely upon the continuous presence of the *res* in the district." *Id*. at 87-88 (internal citations omitted). The Court concluded that "[s]tasis is not a general prerequisite to the maintenance of jurisdiction." *Id*. at 88.

In this case, the Court's decision to retain *in rem* jurisdiction after the transfer of the Defendant domain name registration to a foreign registrar would not impinge the concerns of jurisdiction identified in *Republic*, specifically the enforceability of judgments and fairness of notice to the parties. The Court can enforce its judgment through an order directed to Verisign, the domain name registry. In addition, because Plaintiff has complied with the notice and service requirements of the ACPA, fair notice has been provided to Kumar, the registrant of the Defendant domain name.

In *Porsche,* the defendant domain names in an ACPA cybersquatting action moved to dismiss the complaint and argued that the plaintiff had not alleged facts

sufficient to demonstrate that it could not obtain personal jurisdiction over the registrant. *Id*. at 253. The district court denied the motion and found that *in rem* jurisdiction under the ACPA was proper. *Id*. Several months later, the defendant domain names notified the court that the registrant had decided to submit to personal jurisdiction in another district. *Id*. On appeal, the Fourth Circuit rejected the defendant domain names' argument that the registrant's decision to submit to personal jurisdiction in a court in the United States divested the district court of *in rem* jurisdiction. *Id*. at 255.

The Fourth Circuit analyzed the ACPA and noted that "[t]he statute simply does not require, however, that those conditions [that allow for *in rem* jurisdiction] continue throughout the litigation." *Id*. The court cited cases holding that objections to *in rem* jurisdiction may be waived and concluded that "[b]ecause some objections to the existence of in rem jurisdiction itself may be waived, plainly not all of the conditions that create in rem jurisdiction must persist throughout the life of the case." *Id*. at 256. Of course, *Porsche* is distinguishable from this case because the court addressed whether a defendant could defeat *in rem* jurisdiction under the ACPA after the district court had found that such jurisdiction was proper. *Id*. at 257-58 (noting that "the ACPA refers specifically to filing and a finding, it indicates . . . that once the action is filed and the finding is made, in rem jurisdiction is ordinarily complete.") In this case, Kumar transferred the domain name registration before the Court's finding in the Report and Recommendation that *in rem* jurisdiction was proper, but after the entry of default. (Docs. 12, 16.)

Nonetheless, the policy interests underlying the ACPA support the conclusion that district courts retain *in rem* jurisdiction in ACPA cases even if the registrant transfers the domain name registration to a foreign registrar. As noted in the Report and Recommendation, Congress enacted the ACPA to protect consumers and to prevent misappropriation of trademarks by stopping "cybersquatting." (Doc. 16 at 2, n.3 (citing *City of Carlsbad v. Shah,* 850 F. Supp. 2d 1087, 1103 (S.D. Cal. 2012).) That purpose would be frustrated if registrants could defeat jurisdiction by transferring the registration

of an allegedly infringing domain name to a foreign registrar after the filing of an *in rem* action.³

In this case, Plaintiff alleges that it sent a cease and desist letter to Kumar after learning that Kumar had registered the allegedly infringing domain name, and Kumar responded with an offer to sell the domain name to Plaintiff for $49,999. (Doc. 1. at ¶ 16.) Plaintiff also asserts that it sent Kumar a copy of its request for entry of default by e-mail, and Kumar responded with an e-mail stating "[t]hank you for the update." (Doc. 14 at 2.) Additionally, Plaintiff alleges that after receiving notice that Plaintiff had moved for default judgment, Kumar modified the domain name to include a solicitation to sell it for $19,000. (*Id*. at 1.) Thus, Kumar was aware of Plaintiff's allegations that the domain name *danfriedkin.com* infringed its trademark rights even before Plaintiff filed suit, and he was aware of this matter and Plaintiff's efforts to obtain default judgment. Apparently, when it appeared that the Court would enter default judgment and order GoDaddy to transfer the domain name, he transferred the domain name registration to a foreign registrar. As the court noted in *Porsche*, "[n]othing in the ACPA or its legislative history suggests that Congress intended to permit such manipulation." *Porsche*, 302 F.3d at 258.

Furthermore, courts in ACPA *in rem* cases have rejected similar attempts by infringing registrants to evade court orders to transfer domain names. *See Globalsantefe*,

---

³ The ACPA provides that a plaintiff asserting an *in rem* cybersquatting claim may protect itself from this sort of conduct by sending the domain name registrar or registry a filed, stamped copy of its complaint, which will require the registrar or registry "to expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration" and prohibit the transfer, suspension, or modification of the domain name during the pendency of the action. 15 U.S.C. § 1125(d)(2)(D)(i). Although this provision provides some protection to trademark owners after a suit is filed, there is nothing in the statutory language to suggest that, if a plaintiff does not invoke this provision, a registrant can control the court's *in rem* jurisdiction by transferring a domain name after a suit is filed, served, and default has been entered. This conclusion is consistent with the statutory language that a trademark owner "may bring an in rem action against a domain name in the judicial district in which the domain name registrar . . . that registered . . . the domain name is located." 15 U.S.C. § 1125(d)(2)(A). The statute refers to a domain name that has been "registered" in a judicial district, and does not state that the *in rem* action may proceed in a judicial district only if the domain name registration remains in that district.

250 F. Supp. 2d at 612, 625 (after court ordered foreign registrar of infringing domain name to transfer the domain name to the trademark owner, and registrant obtained injunction from foreign court to bar the transfer, the court ordered domain name registry to cancel the domain name by disabling it); *America Online, Inc. v. AOL.ORG*, 259 F. Supp. 2d 449, 457 (E.D. Va. 2003) (after court ordered domain name registrar in China to transfer domain name to plaintiff, the registrant transferred the domain name to a registrar in South Korea, and the court ordered domain name registry to transfer the domain name to plaintiff).

As the court noted in *America Online*, these cases "illustrate[] the difficulties frequently encountered by trademark owners who prevail in *in rem* ACPA cases and then seek to enforce court domain name transfer orders against foreign registrars and registrants." 259 F. Supp. 2d at 452. In response to these difficulties, the courts found that it was appropriate to order the domain name registries to cancel or transfer the domain name registrations. The court also rejected the claim that ordering a registry to transfer a domain name registered with a foreign registrar would be unfair to foreign registrants. *Id*. at 457. The court stated that the "foreign registrants deliberately chose to use a top-level domain controlled by a United States registry. They chose, in effect, to play Internet ball in American cyberspace. Had they wished to avoid an American ACPA suit and transfer order and American jurisdiction altogether, they might have chosen to register the infringing domain name in top-level domains with solely foreign registries and registrars." *Id*. at 456-57.

Based on the plain language of the ACPA, and relevant case law, the Court concludes that an infringing registrant cannot manipulate, control, or defeat a district court's *in rem* jurisdiction by transferring a defendant domain name to a foreign registrar after the filing of an ACPA cybersquatting action. Therefore, the Court concludes that it retains *in rem* jurisdiction over the Defendant domain name, and that its jurisdiction is not affected by the infringing registrant Kumar's transfer of the domain name registration to a foreign registrar.

### III. Amended Recommendation

For the reasons set forth above, the assigned Magistrate Judge amends the Report and Recommendation (Doc. 16) to modify only the recommendation that the Court enter an order directing GoDaddy to transfer the Defendant domain name *danfriedkin.com* to Plaintiff. Instead, it is recommended that the Court issue an order that:

(1) directs Bigrock Solutions Limited to transfer the Defendant domain name *danfriedkin.com* to Plaintiff;

(2) directs Verisign, Inc. to change the registrar of record for the Defendant domain name *danfriedkin.com* from Bigrock Solutions Limited to GoDaddy, LLC; and

(3) directs GoDaddy, LLC to transfer the registration for the Defendant domain name *danfriedkin.com* to Plaintiff.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

Dated this 20th day of September, 2017.

_____
Bridget S. Bade
United States Magistrate Judge